Third case, Colbert v. City of Chicago. Mr. Flaxman. Thank you. Good morning and may it please the court. This case presents an important question about procedure. The plaintiff is allowed to file a complaint that gives notice of his or her claim and contains enough factual allegations to make the claim plausible. If the defendant challenged the complaint, the plaintiff is permitted under this court's decisions to hypothesize additional facts in opposition to the motion to dismiss. If the district judge grants the motion to dismiss and the plaintiff appeals, the plaintiff is also entitled under this court's decisions to hypothesize additional facts on appeal. I thought we were the only ones who got to hypothesize. Excuse me? Here I thought we were the only ones who could hypothesize. You can too, so we're even up. All right. And at some point in the litigation, the defendant is entitled to know exactly what the plaintiff's theories are. But when is that time? That time isn't in the complaint. It's not in response to a motion to dismiss when you could just add new facts. What if there is no motion to dismiss? The time when the defendant traditionally learns what the plaintiff's theories are is in the pretrial order, which supersedes the complaint and sets out what plaintiff's claims are, how the plaintiff intends to prove those claims, and what the jury instructions are going to be. Since about, I think, 1986, with the growing reliance on summary judgment as a way to resolve cases, the pretrial order has fallen in significance. We don't require that the pretrial order be filed before the motion for summary judgment is filed. So there is no procedure in the rules of civil procedure or in the local rules of any court, as far as I know, that requires the plaintiff to specify his or her legal theories before a motion for summary judgment is filed. In this case, in the original complaint, the plaintiff talked about or complained about an unreasonable search. The plaintiff, Colbert, complained about an unreasonable search of his home. The sufficiency of that allegation wasn't challenged in a motion to dismiss. At depositions, there was extensive questioning of Mr. Colbert and of the officers who had contact with him about what that unreasonable search consisted of. And Mr. Colbert said, included in that unreasonable search was an officer, a parole agent, wrestling me to the ground, taking my keys, opening my locked bedroom, going into my closet and finding a shotgun. The parole officer denied that he did that. The police officer, Chicago police officer who was there, said that never happened. But that's a disputed question of fact, which could not be properly resolved without a trial. The district judge, though, said that theory, that part of the unreasonable search was not in the complaint. And therefore, I can't consider it on summary judgment, even though it was discussed at the depositions, even though nobody challenged the sufficiency of the complaint, even though you could have hypothesized that. The district judge didn't say that, but he could have said that. You could have hypothesized that in response to a motion to dismiss. That was the basis for the district judge's dismissal of Mr. Colbert's claim that wrestling him to the ground, taking his key, opening his locked bedroom and searching his closet was unreasonable. There should be a trial on that. And the parole officer should be entitled to tell the jury that Mr. Colbert just gave me his keys. He wanted me to search his bedroom. He wanted me to look under his bed, look in his closet. That's one of the issues in this case. Another interesting and curious issue in this case is the district judge's theory, which was sold to him by the city about double jeopardy. In the view of a district judge, you can be prosecuted twice. Your first prosecution is when you go to a preliminary hearing and the judge says no probable cause. And then you can be put in jeopardy again, the district judge reasoned, because you can be indicted. At the preliminary hearing, there's no possibility of a final finding of not guilty. That's what we argued to the district judge. He said, no, that's a separate proceeding. You have to file. It may be a separate proceeding. He may be right, too. He's not right. He's not right that it's not final. It's not final. And you can't do malicious prosecution until it is final. Amen. Did I speak over someone? Suppose there's no follow-up after the probable cause determination is made, no probable cause. At what point does that termination ripen into something that would let you pursue a malicious prosecution? Well, you could never, under our reasoning, which we discussed in a footnote discussing the hypothetical, you can never do malicious prosecution because you've never been formally charged. Adversary judicial proceedings under Illinois law do not begin at the preliminary hearing. So would you have a Fourth Amendment claim? Well, you'd have a false imprisonment claim. Under this court's interpretation of the Fourth Amendment, you would not be able to do that because you've had a Gerstein hearing. That's when your Fourth Amendment damages end, according to this court, which may be reversed soon perhaps. Well, we'll see. So the preliminary hearing with the no probable cause determination, is that separate from the Gerstein 48-hour hearing? Yes. It can come much later. It's separate. The way things work in Illinois, especially in Chicago, is you get arrested and you're brought before a judge within 48, usually within 48 hours. The judge reads the police report, which is sworn to under oath, and says, FTC, finding of probable cause, and sets bond. And then sets a date for a preliminary hearing, which under Illinois statute has to be within 30 days. And then within 30 days you have a preliminary hearing. If you're locked up, you're locked up for that time. If there's a finding of no probable cause at the preliminary hearing and you're not held under a parole hold or some other warrant, you're released. The prosecutor can then go to the grand jury, tell the grand jury, the judge said there's no probable cause, but we think you should reach a different result. The grand jury can then indict someone, and then a warrant will be issued for that person's arrest if he or she is not in custody, and that person will be brought before a judge for an arraignment. And then the criminal proceedings will start. The prosecutor doesn't commit to prosecute until there's a finding, until an information or an indictment is filed. And that's what happened in this case, and we filed within, we couldn't file for malicious prosecution after the finding of no probable cause at the preliminary hearing. The third issue in this case is about the city, that their repealed gun ordinance was the driving force behind the arrest of Mr. Colbert, and I'll stand on the brief unless there are any questions on that. My only question was when Willingham first claimed there had been a Scrivener's error, regarding which ordinance was at issue? His police report said 040. The Scrivener's error, I think, came up, I'm not sure when, I'm sure the city will tell you. And I think that we view the Scrivener's error as patching up a deposition, that he just changed his testimony, which creates a jury question about whether the invalid ordinance was the moving force for the arrest. Have both ordinances been repealed, or just one? Yeah, everything was repealed in September of 2013. There were new ordinances adopted like a week after McDonald. This court decided Eazell would set out the framework in July of 2011, and then there were new ordinances in September of 2013. Thank you. All right, thank you, Mr. Flagson. Mr. Hobart. May it please the court. The district court properly granted summary judgment to the city defendants on all of plaintiff's claims. To begin, summary judgment was proper on Mr. Crutcher's malicious prosecution claims. The district court properly concluded that Mr. Crutcher was subjected to two prosecutions, the first ending in a finding of no probable cause at a preliminary hearing, and the second commencing with a grand jury indictment and ending in a finding of not guilty. The district court correctly held that any claim arising from the first proceeding was time-barred. Mr. Crutcher asserted for the first time in his reply brief before this court that that first proceeding is not a prosecution at all. That argument is waived. But waiver aside, Mr. Crutcher bases that argument on a statute requiring either an information or an indictment to commence a felony prosecution. But he ignores the remainder of that statute, which specifically states that an information can only be obtained following a preliminary hearing and a finding of probable cause. Mr. Crutcher also concedes in his reply brief that Illinois courts have entertained claims for malicious prosecution following the dismissal of charges at a preliminary hearing. But regardless, Mr. Crutcher's new argument does not aid him. And that is because whether any claim relating to the first proceeding is time-barred or whether it was not a prosecution at all, that leaves Mr. Crutcher in the same position. Namely, he has no malicious prosecution claim arising from the first proceeding, and he must present evidence to show that a police officer somehow improperly influenced the prosecutor's subsequent decision to seek an indictment. But Mr. Crutcher failed to deduce any such evidence. The only police misconduct that he alleges is a supposedly false statement placed by Officer Willingham in the arrest report and relayed by Officer Willingham to a prosecutor when he sought approval of the initial charges. But that alleged misconduct related only to the first proceeding that ended after the preliminary hearing. What other evidence would the prosecutor have been able to present to the grand jury? The prosecutor actually presented the testimony of a completely different officer who was involved in the arrest, and Mr. Crutcher has never alleged that that officer or any other officer in any way acted improperly during this prosecution. Mr. Crutcher deduced no evidence that Officer Willingham or any other officer improperly influenced the prosecutor at all to seek the indictment, and it is well established that an indictment breaks the chain of causation between any alleged police misconduct and a plaintiff's claimed malicious prosecution in the absence of such evidence. Indeed, here the evidence established that Officer Willingham played no role at all in Mr. Crutcher's prosecution after the night of the arrest. Officer Willingham did not testify at the preliminary hearing. He did not testify before the grand jury. Another officer did. And again, Mr. Crutcher has never alleged that any officer besides Officer Willingham acted improperly. Mr. Crutcher also presented no evidence that the prosecutor who sought the indictment considered the arrest report in deciding to seek that indictment or presented it to the grand jury. In any event, probable cause existed to prosecute Mr. Crutcher even without the purportedly false admission of knowledge of the shotgun, and that is because an informant reported having actually seen Mr. Crutcher in possession of a shotgun and a .40 caliber handgun inside Mr. Colbert's house, and the police corroborated that report by finding a shotgun and a box for the handgun inside the home. When did Willingham first document the anonymous tip? I, you know, off the top of my head, I'm not sure if it appeared in the arrest report or not. I would have to go back and check, Your Honor. I'd be glad to let the court know it was in the arrest report. I know that he testified at his deposition about the tips. Right. But my question, in essence, is whether the details were documented after the police knew what they found in the search. It was documented. I believe it was documented in the arrest report, which was afterwards. I'd have to check. But Officer Willingham testified that he called the IDOC parole agents on the basis of that tip before they went to the house, the whole reason that they went to the house, because they had received the tip, and then he called the IDOC parole agents because he had looked up Mr. Crutcher's information and seen that Mr. Crutcher was a felon on parole and that it was the tip that led to the IDOC officers and the city police officers planning together a joint operation to go and search the house to ensure compliance with the parole term. Could I ask you to address one of the problems that I find very troubling concerning the search, and that is under our system of individual liability under Section 1983, the problem that's posed if police officers carry out an unreasonable search, unreasonably destructive under the circumstances, and the problem posed by identifying the responsible defendants. I take it it's basically standard operating procedure in conducting a search to sequester residents so that they can't interfere with the search. I believe that's correct, Your Honor. And the result of that is that the people most interested, people who would be victims of wrongful police conduct, then have no ability to identify the relevant individuals, correct? Well, to the extent that something occurred within their sight, they would be able to identify that. But the objective of the officers is to keep them out of the way, right? Well, I believe it's to keep them from interfering with the search, yes. But, Your Honor, this court has addressed that multiple times in Hessel and in Molina. Well, what I'm curious about is the idea that was suggested, I believe, in Hessel, and that plaintiffs have raised here about perhaps shifting the burden of proof in such circumstances to a group of potential defendants. That's done in tort law, which is a source of law for Section 1983 cases. Why would that not be reasonable or appropriate here, rather than let wrongdoers under color of official right immunize themselves by making it impossible for anybody to complain? To be clear, Your Honor, this court in Hessel and in Molina, in the context of an ordinary search held both times, that the plaintiff has the burden to come forward with evidence. I'm aware of that, but the Hessel opinion notes a doctrinal option that was not argued in that case and that has been raised here. It's actually Burley. It's the name of the case, and that's a Sixth Circuit case. The Sixth Circuit has done that, but we also raised it as a possibility. But in either event, why is that, in your view, inappropriate? Well, I believe Hessel said that a different result may obtain in a case where there was an allegation that there was some sort of conspiracy of silence among the officers, that they had somehow done something improper afterwards to keep evidence from the plaintiffs. But there's no allegation like that here. This is a routine, normal search in which the officers went into the home and conducted a search, and the plaintiff simply has to— And broke open walls and tore open furniture? That's the allegation. Is that normal? Well, Your Honor, they were searching for weapons. To be honest, I'm not sure what the normal practice is. There's no testimony that I'm aware of from the depositions about the routine or ordinary search in those cases. But this court was very clear in Hessel and in Molina that a plaintiff requires proof of individual liability and that group liability would not apply in those cases in the absence of some extraordinary circumstance involving proof of some sort of conspiracy to prevent the plaintiffs from knowing what happened. And that's what happened in the Sixth Circuit case of Burley, that the officers went in and they were actually masked. They actually took affirmative efforts to prevent the plaintiffs from identifying them. And for that reason, the court there said that on remand, the district court could consider whether or not shifting the burden was appropriate. I see my time is up. I'm happy to answer any further questions, but otherwise we would ask this court to affirm the judgment below. Thank you. Thank you, Mr. Halpern. Mr. Bieseck? May it please the Court, my name is Frank Bieseck. I represent State Defendants Hopkins, Johnson, and Tweedle. This court should affirm judgment in favor of State Defendants, first because the district court did not abuse its discretion when it found that Hopkins did not impliedly consent to litigating two claims that Colbert raised for the first time in his response to the motion for summary judgment, and second because State Defendants were entitled to summary judgment on Colbert's property damage claim, where he presented no evidence that any of the defendants caused damage to his property. I'm actually going to address the second issue first because we were just talking about that during the city's argument. And I want to mention Burley where the court, where the Sixth Circuit discussed the possibility of some sort of a burden shifting in terms of the burden of production of certain evidence. The court didn't take an opinion one way or the other whether or not such a burden shifting approach would be appropriate and left it for the district court to do so. Just recently, the Sixth Circuit has revisited the issue in an appeal in that same Burley case following the retrial. The citation isn't in the brief, but it's 834 F3D 606. And there, the district court decided not to adopt this burden shifting approach, not to place the burden on the defendants to identify which officers did what. And the Sixth Circuit affirmed the district court's decision on appeal. In fact, the Sixth Circuit said, Plaintiff's proposed burden shifting would stand Section 1983 Bivens liability jurisprudence on its head. That case law teaches that in order to impose individual liability upon a law officer for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the officer's involvement to the constitutional infirmity. So even in the Sixth District in Burley, which considered a somewhat different burden shifting approach, that court has since decided that an approach would be inconsistent with Section 1983's individual liability. And this sort of unfairness concern that perhaps it would be particularly difficult for a plaintiff to prove his or her case in these circumstances does, first of all, arose in Hessel and Molina, but this court found that summary judgment was nonetheless appropriate. But in addition, the case here is even weaker than in Hessel and Molina, because in Hessel and Molina, the court could at least assume that one of the defendants caused the damage at issue. Here, plaintiff has sued only four of the officers who conducted the search, the three state defendants and Officer Willingham, when both Colbert and Crutcher testified that at least ten officers conducted the search of the residents. So here we don't even have that baseline assumption that one of the defendants must have done something because he hasn't sued all of the defendants. Now going back to the initial consent to litigate issue, as well as established that a plaintiff cannot amend his complaints in response to a motion for summary judgment to add a claim on the basis of facts that were not alleged in the original complaint or in the complaint unless the defendant has consented to litigating that unpleaded claim. Therefore, this issue presents a two-part inquiry. Part one asks whether Colbert's claims alleging that Hopkins wrestled him to the ground and took his key rested on a new factual basis that wasn't in the second amended complaint. And then the second part asks whether Hopkins impliedly consented to litigating the unpleaded claims. As to part one, the allegation in the second amended complaint against state defendants as to the search of the residents is that they, quote, searched the residents of Plaintiff Colbert in an unreasonable manner, causing damage to Colbert's property. Thus, the factual basis for the claim in the second amendment consists of the conduct of state defendants during the search that allegedly caused the harm of damaging Colbert's property. But the factual basis for Colbert's new claims against Hopkins consists of the conduct of only Hopkins, and not the other state defendants, in obtaining the key to Colbert's bedroom, and that caused an allegedly different harm that has nothing to do with property damage whatsoever. Therefore, the new claims are based on a different factual basis that aren't contained within the second amended complaint, and therefore, Colbert could only pursue these claims if Hopkins had consented to litigate them. And on that issue, the district court did not abuse its discretion by finding that Hopkins did not impliedly consent to litigating these new unpleaded claims based solely on the existence of testimony about the search during the depositions. In fact, this court has held that a district court does not need to imply defendants' consent to try an unpleaded claim merely because evidence as to a claim that was alleged in the complaint also tends to establish an unpleaded claim. Here, in the property damage claim, Colbert was alleging, and his wife testified in her deposition, that there was damage to Colbert's bedroom. So evidence of how the officers gained access and entry to the bedroom was relevant to whether or not there was property damage as part of that entrance. And so here, the district court did not abuse its discretion by not implying Hopkins' consent to litigate an unpleaded claim solely on the basis of this evidence that was relevant to a claim that was pleaded in the complaint. And just very briefly, back on the first part of the consents litigated issue, I should have also mentioned that the district court correctly noted in denying Colbert's motion to amend that his answers in the supplemental interrogatory answers were consistent with the reading of the claim in his complaint as being a property damage claim, where Colbert stated that the extent of his claims were that the officers trashed my house and falsely arrested me. And then, during Colbert's deposition, he was given the opportunity to review his interrogatory answers and make any changes that he wanted, and he said that he did not want to make any changes to his answers and that everything in the supplemental interrogatories were true and correct. So that just further confirms the reading of the complaint by the district court. And therefore, unless your honors have any further questions. When did the Scrivener's error issue first arise? The Scrivener's error issue. About which ordinance Crutcher was supposedly arrested for? That I'm not sure, Your Honor. That was, I think, part of the city defendants when they filled out their arrest report. I hope somebody can help me with that. Mr. Hooper? I'd be happy to answer that, Your Honor. The issue was first raised in a motion to dismiss by the city defendants early on in litigation, the idea that it was a Scrivener's error. So the plaintiffs were aware of that at that time, at the early point in the proceeding. Motion to dismiss. And a motion to dismiss. Thank you. Thank you. All right. Mr. Blackman? Thank you. Actually, the district judge referred to the Scrivener's error argument in its opinion of November 12, 2013, which is that part's a short appendix four. I just want to focus on the suggestion that shifting the burden of proof. This court had the opportunity to shift the burden of proof to the defendants in Bogan v. City of Chicago about when the police officers enter a home without a warrant, who has the burden of proof to show exigent circumstances. And the court came out saying it's the plaintiff's burden. So we're not asking the court to overrule that. Our position is much more modest. It's that when there's a summary judgment motion, the plaintiff can show that he and his witnesses, or she, that the plaintiff and the plaintiff's witnesses were restrained in a room and could not observe what the officers were doing, and that there is damage to the home as a result of the search, that that's a disputed question of fact, and it's a question for the jury. And the jury can say, when ten officers come up and say, I didn't see any, I didn't damage anything, I didn't see anybody damage anything, I have no idea how the place was left in a mess. It must have been the dog that came in and broke the mattress and broke the walls, or maybe man from Mars, but none of the officers, we didn't do anything wrong. The jury could say, we don't believe that.  Somebody caused that damage, and if you want to lie about it and cover it up, we're going to require you all pay the plaintiffs for the damages. What do we do with the argument that you didn't sue enough defendants? I sued the defendants who said they were there. The plaintiff said, we thought there were ten people. I don't have records to show that there were ten people there. There were people outside guarding the perimeter. None of the officers who we deposed said there were other officers searching. And they could certainly ask a question that could be presented to the jury, to say, well, there were officers A, B, C, and D, and officers A, B, C, and D would come in and say, either I wasn't there, I don't remember, or I didn't see anybody do anything wrong. I don't know why I'm here as a witness. I don't know how this stuff got damaged. Stuff was damaged. There were officers searching. The plaintiffs and their witnesses were restrained by the officers, as is the custom and the practice, and probably the safe thing to do. But somebody should be accountable. Now, in the suppositions you took, Mr. Flaxman, they all denied involvement? Breaking anything or seeing anybody destroy anything else. Yeah. So could you have alleged a conspiracy of silence in there? Would I have needed to allege that? I'm just asking, is that how we might better approach this, when you get the kind of responses that you speak of? Yes. We could have proceeded on that theory, and that's probably the way I'll do it next time. On the other hand, the, well, I don't know. It's a difficult problem, given our case law and the system of remedies we have. I'll leave it for there right now. I'm just not asking to change the law, just to dispute a question of fact. I did want to ask whether the Chicago police are now using body cameras in such circumstances. I don't believe that's filtered down to searches of homes. And that wouldn't have caught it, because some of the searching was done by Illinois State police officers, parole officers. Thank you. Thank you, Mr. Flaxman. Thanks to all counsel. The case is taken under advisement.